503 S.E.2d 727

**James Q. WALTON, Respondent,**

**v.**

**CANAL INSURANCE COMPANY, Carl Owens, individually, Wayne Kinard, individually, and Carl Owens and Wayne Kinard, d/b/a Owens and Kinard Transport, Inc., a/k/a Owens Kinard Timber Transportation, a/k/a Owens and Kinard Timber Transportation, Inc., Petitioners.**

**No. 24818.**

Supreme Court of South Carolina.

Heard June 4, 1998.

Decided July 20, 1998.

Joseph S. Brockington and Mark C. Brandenburg, both of Joseph S. Brockington, P.A., Charleston; and O. Doyle Martin, of Leatherwood, Walker, Todd & Mann, Greenville, all for petitioners.

Colden R. Battery, Jr. and Derek C. Gilbert, both of Harvey & Battey, P.A., Beaufort, for respondent.

TOAL, Justice:

In this declaratory judgment action, Canal Insurance Company ("Insurance Company") has petitioned this Court to review the Court of Appeals' finding of coverage under S.C.Code Ann. §§ 38–75–740 & –750 (1989). We affirm as modified.

## FACTUAL/PROCEDURAL BACKGROUND

Insurance Company issued a policy to Carl Owens and Wayne Kinard ("Insured")—who did business as Owens & Kinard Transport, Inc.—to cover six tractors and one semi-trailer used in their pulpwood/logging business. The policy was effective from January 2, 1992 until January 2, 1993. On December 4, 1992, an employee of Insurance Company's underwriting department mailed a renewal notice to Insured. On December 16, 1992, a customer services representative for Insurance Services of Hampton, an insurance agency, mailed an invoice to Insured for renewal of the policy. No response was received from Insured.

On January 4, 1993, at 7:00 a.m., an employee of Insured was involved, while driving a company truck, in an accident with James Walton. At 8:30 a.m. of the same day, Kinard telephoned the customer service representative for Insurance Services regarding coverage for the truck. Later in the day, Owens delivered a check to Insurance Services. Insurance Services contacted Insurance Company, which approved a new policy, effective from 1:35 p.m., January 4, 1993 until January 4, 1994.

Walton filed suit against Insured for injuries sustained as a result of the truck accident. Insurance Company denied coverage. Walton subsequently commenced this declaratory judgment action to determine whether coverage existed on January 4th when the company truck was involved in the accident. The master in equity granted Walton's motion for summary judgment, finding that insurance coverage existed on January 2–4, 1993, during which time the accident occurred.

Insurance Company appealed the matter. The Court of Appeals affirmed the master's decision on different grounds. Insurance Company has petitioned this Court, arguing that

the Court of Appeals erred in finding coverage existed under the relevant statutes.

## LAW/ANALYSIS

### A. APPLICABLE STATUTE

 The dispute in this case centers on the interpretation of two statutes, S.C.Code Ann. §§ 38–75–740 & –750. The first, section 38–75–740, concerns restrictions on *nonrenewal* of policies, provides in relevant part:

(a) No insurance policy may be nonrenewed by an insurer except in accordance with the provisions of this section, and any nonrenewal attempted which is not in compliance with this section is ineffective.

(b) A policy written for a term of one year or less may be nonrenewed by the insurer at its expiration date by giving or mailing written notice of nonrenewal to the insured and the agent of record, if any, not less than thirty days prior to the expiration date of the policy....

(d) The notice required by this section must be given or mailed to the insured and the agent at their addresses shown in the policy or, if not reflected therein, at their last known addresses. Proof of mailing is sufficient proof of notice.

(e) Any notice of nonrenewal shall state the precise reason for nonrenewal.

S.C.Code Ann. § 38–75–740.

The subsequent section, S.C.Code Ann. § 38–75–750, concerns *renewal* of policies:

(a) If an insurer intends to renew a policy, the insurer shall furnish renewal terms and a statement of the amount of premium or estimated premium due for the renewal policy period in the manner required by this section.

(b) If the policy being renewed (hereinafter "original policy") is written for a term of one year or less, the renewal terms and statement of premium or estimated premium due must be furnished to the insured *not less than thirty days prior to the expiration date of the original policy*....

(d) The insurer may satisfy its obligation to furnish renewal terms and statement of premium or estimated premium due by either of the following methods:

(1) mailing or delivering renewal terms and statement to the insured at his address shown in the policy or, if not reflected therein, at his last known address, not less than thirty days prior to expiration or anniversary; or

(2) mailing or delivering renewal terms and statement to the agent of record, if any, not less than forty-five days prior to expiration or anniversary, along with instructions that the agent furnish the renewal terms and statement to the insured not less than thirty days prior to expiration or anniversary.

S.C.Code Ann. § 38–75–750 (emphasis added).

In this case, the master held in his order that the renewal statute, section 38–75–750, was the applicable statutory provision. This statute requires that notice be given "not less than thirty days prior to the expiration date of the original policy." The notice here was mailed on December 4, 1992, which was 29 days prior to the January 2, 1993 expiration of the policy. Accordingly, the notice requirement was not satisfied. The master found that the policy went into effect without the payment of a premium, although the insured would have to pay the earned premium for the period in which the renewal policy was in effect.

The Court of Appeals affirmed the master's order, but employed a different analysis. It reasoned that the nonrenewal statute, section 38–75–740, was the applicable statute. The Court of Appeals found that Insurance Company's attempt to terminate coverage, without having provided the requisite notice, was ineffective. The Court next looked to the renewal statute, section 38–75–750, and concluded that because of the lack of notice, Insured had the right to cancel the renewal policy within the thirty day period following receipt of the renewal terms. Because Insured had not elected to cancel the renewal policy at the time the accident occurred, coverage under the policy had not yet terminated. Insurance Company has petitioned this Court, arguing that the Court of Appeals erred in applying the nonrenewal statute. We agree.

Definitions of the terms "renewal" and "nonrenewal" are found in S.C.Code Ann. § 38–75–720 (1989). "Renewal" means:

the issuance of or the offer to issue by an insurer a policy succeeding a policy previously issued and delivered by the same insurer or an insurer within the same group of insurers, or the issuance of a certificate or notice extending the term of an existing policy for a specified period beyond its expiration date.

S.C.Code Ann. § 38–75–720(1). "Nonrenewal" means "termination of a policy at its expiration date.[1]" S.C.Code Ann. § 38–75–720(5).

In *Axson v. A. Mortgage Company, Inc.,* 312 S.C. 433, 441 S.E.2d 193 (Ct.App.1994), the Court of Appeals held that where an insurer issues proper notice of an offer to renew and the insured fails to take the necessary steps to accept the offer, the policy has been nonrenewed by the insured, not the insurer, and the requirements of section 38–75–740 are inapplicable. We affirmed the decision of the Court of Appeals. *Axson v. A. Mortgage Company, Inc.,* 316 S.C. 253, 449 S.E.2d 491 (1994). Our opinion discussed that the insurance company offered to issue a policy succeeding the homeowner's previous policy. Since that act constituted a renewal of the policy, insurance company did not need to provide written notice of nonrenewal.

In light of the statutory definitions, as well as the *Axson* opinions, we conclude that in the present case Insurance Company attempted to renew the policy, not to "nonrenew" it. The document that Insurance Company sent on December 4, 1992 to Insured contains at the top of the page in large bold letters, the words **"RENEWAL NOTICE."** The notice delineates premium amounts for the different vehicles. It also states that "If premium is shown, coverage is same as on previous policy." Moreover, an employee of Insurance Company declared, in an affidavit referring to the same document, that she sent out the "renewal notice" on December 4, 1992. Clearly, this was an "offer to issue ... a policy succeeding a policy previously issued and delivered by the same insurer." *See* S.C.Code Ann. § 38–75–720(1). It was not a nonrenewal,

---

1. "Expiration date" means "the date upon which coverage under a policy ends." S.C.Code Ann. § 38–75–720(4).

the "termination of a policy at its expiration date." *See* S.C.Code Ann. § 38–75–720(5).

Because renewal notices are governed by section 38–75–750, Insurance Company had to furnish to Insured notice of the renewal terms "not less than thirty days prior to the expiration date of the original policy." Here, the policy expired on January 2, 1993; the renewal notice was sent out on December 4, 1992. Because this was less than thirty days prior to the expiration date of the original policy, Insurance Company violated the provisions of section 38–75–750.

## B. REMEDY

■ Once it is ascertained that section 38–75–750 has been violated, it must then be determined what the remedy should be. Subsection (e) of S.C.Code Ann. § 38–75–750 provides:

> (e) If the insurer fails to furnish the renewal terms and statement of premium or estimated premium due in the manner required by this section, *the insured may elect to cancel the renewal policy within the thirty-day period following receipt of the renewal terms and statement of premium or estimated premium due.* Earned premium for any period of coverage must be calculated pro rata based upon the premium applicable to the original policy and not the premium applicable to the renewal policy.

S.C.Code Ann. § 38–75–750(e) (emphasis added). The words, "the insured may elect to cancel the renewal policy within the thirty-day period following receipt of the renewal terms and statement of premium or estimated premium due," imply that there is an existing policy that one may "cancel." In other words, under the statute, Insurance Company's failure to provide notice resulted in the automatic renewal of the policy for a limited period of time.[2]

Although the statute does not explicitly say how long the insured has to affirm the renewal of the policy, section 38–75–

---

**2.** Insurance Company argues that even if section 37–75–750 is applicable, it would apply in a situation where the renewal policy, by express policy language, either takes effect pursuant to a clause in the insurance contract or provides a grace period in which the insured may pay an overdue premium prior to the lapse of the coverage. Insurance Company further asserts that the intent of the section is to provide the insured with thirty days notice of the impending end of coverage and protect against "premium shock." The section prevents the charging of

750(e), as noted above, does provide that the insured may elect to "cancel the renewal policy within the *thirty-day period following receipt* of the renewal terms and statement of premium or estimated premium due." (emphasis added). The most reasonable construction of this statute is that the insured has thirty days, following receipt of the renewal statement, to cancel (or affirm) the renewal. In other words, the policy is automatically renewed to the extent of time necessary to give the insured thirty days, following receipt of the renewal statement, to decide to cancel or not. If the insured does not act within this thirty day window of time, then coverage will not extend beyond this period.[3]

A number of reasons support such a construction of the statute. First, the alternatives (either having no sanction for insurance companies or providing automatic renewal of the policy for the entire year) are not attractive. A thirty day period following receipt of the renewal terms provides a reasonable, but not excessive, amount of time for the insured to determine what he wants to do. Such a rule punishes the insurance company to the extent of its error. For example, the insured would get ten extra days if notice were sent out ten days late. At the same time, because such a rule automatically extends the policy for thirty days following receipt of the renewal notice, it offers a stimulus to insurance companies to provide timely notice of renewal to avoid such a situation. A thirty day rule also has the merit of being clear and definitive in its application.

■ In the instant case, we find Insured affirmed the policy within thirty days of the date Insured received the renewal statement. Insurance Company sent out the renewal notice on December 4, 1992, but the record does not specify when

---

"short rate" cancellation premiums to an insured who cancels a renewal policy that has become effective after the insurer renewed the policy without the insured's consent or failed to properly notify the insured of the renewal offer thirty days in advance of expiration. There is absolutely nothing in the language of the statute itself that would support this construction.

3. Section 38-75-750(e) states that "Earned premium for any period of coverage must be calculated pro rata based upon the premium applicable to the original policy and not the premium applicable to the renewal policy."

Insured received the notice.[4] However, even though the exact receipt date is unknown, the earliest possible time it could have been received would have been on December 4th, the day the notice was mailed out. Thirty days from December 4th was January 3rd, which was a Sunday.

Under the Rules of Civil Procedure, as well as case law, Sunday is not included in calculating the end of the thirty day period. Rule 6(a), SCRCP provides:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by *any applicable statute*, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, *unless it is a* Saturday, *Sunday* or a State or Federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday.

Rule 6(a), SCRCP (emphasis added). *See Lindsey v. South Carolina Tax Comm'n*, 323 S.C. 57, 448 S.E.2d 577 (Ct.App. 1994) (Rule 6(a), SCRCP provides, in computing a time period prescribed by a statute, the last day of the period is to be included, unless it is a Saturday, Sunday or a State or Federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday.). Accordingly, because the last day of the thirty day period fell on a Sunday, the period ran until the end of the next day, which was the end of January 4th. Here, Insured sought to renew the policy on the morning of January 4th. Thus, Insured acted within the thirty day period during which the policy was still in effect.

### CONCLUSION

Based on the foregoing, we **AFFIRM AS MODIFIED** the decision of the Court of Appeals.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

**4.** There is a copy in the record of the renewal notice sent to Insurance Services. This copy has on it a "Received" stamp of December 7, 1992. Thus, it is likely that Insured received it the same day; however, this cannot be ascertained from the current record.